**VEDDER PRICE (CA), LLP**
CHRISTOPHER R. RAMOS (SB# 301556)
cramos@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 424-204-7700
F:  +1 424-204-7702

**VEDDER PRICE P.C.**
BLAINE C. KIMREY (admitted *pro hac vice*)
bkimrey@vedderprice.com
JEANAH PARK (admitted *pro hac vice*)
jpark@vedderprice.com
222 N. LaSalle Street
Chicago, Illinois  60601
T: +1 312-609-7500
F: +1 312-609-5005

*Attorneys for plaintiff*
*KCC CLASS ACTION SERVICES, LLC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| KCC CLASS ACTION SERVICES, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>AETNA INC.,<br><br>                    Defendant. | Case No. 2:18-cv-01018-JFW-JEM<br><br>**RESPONSE IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# <u>TABLE OF CONTENTS</u>

**Page**

I.  Introduction ........................................................................................... 1

II.  Factual allegations ................................................................................. 3

III.  Argument ............................................................................................... 4

    A.  Count I states a claim for breach of contract ...................................... 5

        1.  The FAC pleads the existence of a contract ............................... 5

        2.  The FAC pleads performance by KCC ...................................... 7

    B.  Count II adequately states a claim for negligence/failure to warn ....... 8

        1.  KCC does not need to allege a special relationship .................. 9

        2.  Even if KCC needed to plead a special relationship, it has done so .............................................................................. 10

        3.  The injuries incurred by KCC were reasonably foreseeable .............................................................................. 12

        4.  KCC has adequately alleged proximate cause .......................... 13

    C.  Count III adequately states a claim for *quantum meruit* .................... 13

    D.  The declaratory judgment claims in Counts IV-VI are adequately pled .................................................................................. 15

IV.  Conclusion ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aetna, Inc. v. Kurtzman Carson Consultants, LLC,*
  Case No. 2:18-cv-00470 (E.D. Pa.) ................................................................ 6, 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 4

*Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.,*
  118 F. Supp. 2d 1002 (C.D. Cal. 2000) ............................................................ 14

*Cossu v. Jefferson Pilot Sec. Corp.,*
  410 F.3d 591 (9th Cir. 2005) ............................................................................ 17

*Doe No. 14 v. Internet Brands, Inc.,*
  2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) .......................... 9, 10

*Gov't Employees Ins. Co. v. Dizol,*
  133 F.3d 1220 (9th Cir. 1998) .......................................................................... 16

*Hernandez ex rel. Telles-Hernandez v. U.S.,*
  665 F. Supp. 2d 1064 (N.D. Cal. 2009) ............................................................ 13

*Keates v. Koile,*
  2018 WL 1161890 (9th Cir. March 6, 2018) ...................................................... 4

*Mortgs., Inc. v. United States Dist. Court,*
  934 F.2d 209 (9th Cir. 1991) ............................................................................ 17

*Scottsdale Ins. Co. v. OU Interests, Inc.,*
  2005 WL 2893865 (N.D. Cal. Nov. 2, 2005) ..................................................... 6

*Sierra View Local Health Care Dist. v. Influence Health, Inc.,*
  2016 WL 2346799 (E.D. Cal. May 3, 2016) ..................................................... 15

*United States ex rel. N. Coast Iron Corp. v. Global Metals Corp.,*
  2015 WL 12661913 (C.D. Cal. Jan. 12, 2015) .................................................... 7

**California Cases**

*Alexander v. Codemasters Group Limited,*
  104 Cal. App. 4th 129 (2002) ............................................................................. 5

*Bustamante v. Intuit, Inc.,*
  141 Cal. App. 4th 199 (6th Dist. 2006) .............................................................. 7

*DC Media Capital, LLC v. Imagine Fulfillment Servs., LLC,*
  2013 WL 4665219 (Cal. App. Aug. 30, 2013) (Unpub. Disp.) ........................... 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Meyer v. Benko*,
    55 Cal. App. 3d 937 (1976) ................................................................5

*Oasis West Realty, LLC v. Goldman*,
    250 P.3d 1115 (Cal. 2011) ................................................................5

*Peter Culley & Associates v. Superior Court*,
    10 Cal. App. 4th 1484 (1992) ..........................................................17

*PPG Industries, Inc. v. Transamerica Ins. Co.*,
    975 P.2d 652 (Cal. 1999) .................................................................13

*Regents of University of California v. Superior Court*,
    2018 WL 1415703 (Cal. March 22, 2018). .............................10, 11

*Union Pac. Corp. v. Wengert*,
    79 Cal. App. 4th 1444 (2000) ..........................................................16

**Federal Statutes**

Health Insurance Portability and Accountability Act, 42 U.S.C.
    § 300gg, 29 U.S.C § 1181, *et seq.*, 42 U.S.C. § 1320d, *et seq.* ....................*passim*

**California Statutes**

CAL. CIV. CODE
    § 1580 ................................................................................................5
    § 1584 ................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 8(a) ....................................................4

Local Rule 7-3 .....................................................................................15

RESTATEMENT (SECOND) OF CONTRACTS § 32 (1981) ............................5

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

OPP'N TO MOT. TO DISMISS
CASE NO. 2:18-CV-01018-JFW-JEM

1

## I.    Introduction

2        The Motion to Dismiss the First Amended Complaint (ECF No. 29, the

3   "Motion") filed by defendant Aetna, Inc. ("Aetna") paints quite an alarming

4   picture.  To accept Aetna's version of the events, the Court must believe that Aetna

5   — a massive health insurance company with reported earnings of approximately

6   $63.2 billion in 2016[1] — and its counsel at Gibson, Dunn & Crutcher ("Gibson")

7   — a sophisticated law firm with experience in health law and data privacy (FAC,

8   ¶ 5) — provided the protected health information ("PHI") of thousands of Aetna

9   insureds to plaintiff KCC Class Action Services, LLC ("KCC") without entering

10  into a contract.  Aetna would have this Court believe that Aetna, as the Covered

11  Entity under HIPAA,[2] and Gibson, as Aetna's Business Associate under HIPAA,

12  had no qualms about sharing this highly sensitive information with KCC even

13  though, according to Aetna, there was no agreement for KCC to perform services

14  on behalf of Aetna.  This is, of course, absurd.

15       The much more likely scenario — and the one that actually happened — is

16  that Gibson, on behalf of Aetna, retained KCC (both by its words and actions) to

17  perform the notification and claims administration services.  This is consistent with

18  the settlement in the underlying case (which placed responsibility for sending the

19  notices on Aetna), the initial outreach to KCC (which was made by Gibson), the

20  words of Aetna's counsel (noting that the key terms were acceptable), and the

21  subsequent actions of the parties.  And even if the Court were to find that no

22  contract was formed, KCC still adequately alleges that it performed services on

23  behalf of Aetna and is entitled to payment for the reasonable value of its services.

24

25

26  [1] *See* First Amended Complaint, ECF No. 25 (the "FAC"), at ¶ 3.

27  [2] Health Insurance Portability and Accountability Act, 42 U.S.C. § 300gg, 29 U.S.C
28  §§ 1181, *et seq*., and 42 U.S.C. §§ 1320d, *et seq*.

Aetna argues that regardless of any relationship it may have had with KCC, Aetna had no obligations or duties to KCC.  Specifically, Aetna suggests that the nature of KCC's business as a settlement administrator means that it should have expertise in handling PHI and HIPAA compliance.  (Motion, pp. 3, 19).  But it was Aetna (which claims that it has "extensive operational and technical protections in place" to protect its insureds' PHI) and Gibson (which was recently named a "Privacy Practice Group of the Year") that actually should have that expertise.  (FAC, ¶¶ 28, 73).   However well-versed KCC may be at handling settlement administration and notice mailings, the healthcare lawyers that reviewed and approved the mailings were employed exclusively by Aetna and Gibson.  (FAC, ¶ 16).   KCC relied on Aetna and Gibson to provide the necessary healthcare expertise in this matter, but they failed to do so — and as alleged in the FAC, neither Aetna, nor its agent Gibson, advised KCC to "independently take any protective measures to ensure that the safety and security of the PHI of the insureds at issue would be maintained."  (FAC, ¶ 132).[3]

Accordingly, the Court should hold that KCC has done more than enough to state a claim and deny Aetna's Motion.

---

[3] Over time, Aetna has exhibited a pattern of disregard for its insureds' PHI.  (FAC, ¶¶ 91-100).  Aetna suggests that references to its past misconduct is "irrelevant" and "below-the-belt," (Motion, p. 1), but to the contrary, these allegations demonstrate that Aetna routinely ignores its obligations under HIPAA, making it all the more likely that Aetna (rather than KCC) was responsible for this incident.  It is telling that after meeting and conferring on a motion to strike (in fact, the footer on p. 2 of the Notice of Motion still identifies it as a motion to strike), Aetna declined to pursue those meritless arguments.  More recently, CVS, the company that is acquiring Aetna, experienced a similar failure to safeguard health information that did not involve KCC.  *See Doe v. CVS Health Corp.*, Case No. 18-cv-238 (S.D. Ohio).

## II.     Factual allegations

This case, at its core, is about an agreement between Aetna, through its agent, Gibson, and KCC for KCC to provide settlement notification and administration services for Aetna.  Aetna is one of the country's largest and oldest health insurers (FAC, ¶ 3) and was represented in the underlying matters by Gibson, a global law firm with more than 1,200 lawyers in 20 offices worldwide.  *Id.*, ¶ 5.  KCC, for its part, is a settlement administrator that administers class action claims of all types. *Id.*, ¶ 9.

In February 2017, Gibson achieved a settlement for Aetna of two putative class action lawsuits.  *Id.*, ¶ 38.  The relevant settlement agreement stated that Aetna would be responsible for sending out notices to affected insureds.  *Id.*, ¶ 40. Aetna, through Gibson, reached out to KCC in late February 2017 to process and carry out the notices contemplated by the settlement agreement.  *Id.*, ¶ 46.  On May 10, 2017, KCC emailed a proposal in response to Aetna's request that KCC administer the mailing of the Notices.  *Id.*, ¶ 48.  That proposal was addressed to both Gibson and Whatley Kallas LLP ("Whatley"), which represented the named plaintiffs in the underlying litigation.  *Id.*  On May 22, 2017, Gibson responded to the proposal by email, saying, "**This looks fine to Aetna**. My **only concern** is that the proposal includes 'process opt-outs and provide a declaration of notice procedures' — this will not be necessary given that this is not a class settlement. Will that change the proposal?" (Emphasis added).  *Id.*, ¶ 49.

On or about May 23, 2017, KCC issued a revised proposal (the "KCC Agreement"), again addressed to both Gibson and Whatley, in response to Aetna's requested changes.  *Id.*, ¶ 50.  On May 24, 2017 — the day after receiving the KCC Agreement and without having seen a signed copy of the agreement — Gibson emailed a data set of Aetna insured PHI to KCC so that KCC could begin carrying out its obligations under the KCC Agreement.  *Id.*, ¶ 68.  From that date until the date the notices were mailed, all parties continued to behave as if there was an

agreement for KCC to perform work on behalf of Aetna — KCC received significant feedback from Gibson in preparing the notices (*id.*, ¶ 75), Gibson overruled suggestions from Whatley (*id.*, ¶ 76), and Gibson approved the content and form of the letters that were ultimately mailed out. *Id.*, ¶ 129. At no time during this period did Aetna, either directly or through its agent, Gibson, suggest that the PHI warranted special protection or ask KCC to sign a qualified protective order affidavit or a Business Associate Agreement ("BAA"). *Id.*, ¶¶ 77, 79, 132.

## III.  Argument

Aetna admits, as it must, that the Court should deem the factual allegations in the FAC to be true for the purposes of Aetna's Motion. (Motion, p. 6); *see also Keates v. Koile*, 2018 WL 1161890, *4 (9th Cir. March 6, 2018) ("At the motion-to-dismiss stage, we take all well-pleaded factual allegations in the complaint as true, construing them "in the light most favorable to the nonmoving party."). Federal Rule of Civil Procedure 8(a) sets forth the standard for pleading in civil cases. A complaint survives a motion to dismiss as long as it "states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Here, KCC easily meets these pleading standards and the Motion should be denied. KCC has pled sufficient facts to plausibly support a breach of contract claim; thus Count I survives along with the contract-based claims in Counts IV and V. KCC also has plausibly alleged that Aetna acted with misfeasance in mishandling the insured PHI and failed to warn KCC of the foreseeable harm that would result. Moreover, even if Aetna's actions were merely nonfeasance, KCC has adequately alleged that Aetna had a duty arising out of a special relationship with KCC. KCC's *quantum meruit* claim in Count III also should survive because

KCC has adequately alleged that it performed work on behalf of Aetna.  Finally, Count VI should survive because KCC has plausibly alleged that it is entitled to a declaratory judgment that Aetna has no valid claim against KCC for indemnity, contribution and/or reimbursement.

### A.     Count I states a claim for breach of contract.

"The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).  Because the FAC adequately pleads all of these elements, Aetna's Motion should be denied.

### 1.     The FAC pleads the existence of a contract.

Contract formation requires mutual assent.  Cal. Civ. Code § 1580.  "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Alexander v. Codemasters Group Limited*, 104 Cal. App. 4th 129, 141 (2002); *see also Meyer v. Benko*, 55 Cal. App. 3d 937, 942–943 (1976) (holding that the existence of mutual consent "is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe").  "Performance of the conditions of a proposal, *or* the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."  Cal. Civ. Code § 1584 (emphasis added).  "In case of doubt an offer is interpreted as inviting the offeree to accept either by promising to perform what the offer requests or by rendering the performance, as the offeree chooses." Restatement (Second) of Contracts § 32 (1981); *see also DC Media Capital, LLC v. Imagine Fulfillment Servs., LLC*, 2013 WL 4665219, *3 (Cal. App. Aug. 30, 2013)

1   (Unpub. Disp.)[4] ("Allowing the offeree to accept either by promise or performance
2   makes sense because the offeree could suffer a considerable loss if it chooses to
3   accept the offer by performance but the offeror is allowed to deny the existence of a
4   contract on the ground the offeree should have chosen to accept by a promise.").

5          Here, the FAC alleges that (1) Aetna (through Gibson) approached KCC
6   about performing mailing and settlement administration services, (2) KCC included
7   Gibson on the initial proposal, (3) Aetna's counsel manifested her consent to the
8   key terms after the first proposal, (4) KCC included Gibson on the second proposal,
9   (5) immediately after receiving the second proposal, Aetna's counsel acted
10  consistently with the terms of the proposed contract, and (6) the parties continued to
11  act consistently with the proposed contract in the two months that followed.  These
12  are clear manifestations of mutual assent that would lead a reasonable person to
13  believe that a contract was formed.  The fact that Aetna (through Gibson) chose to
14  accept KCC's offer through performance makes the agreement no less enforceable.[5]

15         At an absolute minimum, KCC has pled sufficient facts related to contract
16  formation that this issue cannot be resolved at the pleading stage.  Simply put,
17  "[w]here the existence of a contract is at issue and the evidence is conflicting or
18  admits more than one inference, it is for the trier of fact to determine whether the

19  _____

20  [4] "Although the court is not bound by unpublished decisions of intermediate state
21  courts, unpublished opinions that are supported by reasoned analysis may be treated
    as persuasive authority."  *Scottsdale Ins. Co. v. OU Interests, Inc.*, 2005
22  WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v.*
23  *Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may
    consider unpublished state decisions, even though such opinions have no
24  precedential value.")).

25  [5] Notably, in its Complaint in the Eastern District of Pennsylvania, Aetna **admitted**
26  that it agreed to retain KCC.  *See Aetna, Inc. v. Kurtzman Carson Consultants,*
    *LLC*, Case No. 2:18-cv-00470 (E.D. Pa.) (the "E.D. Pa. Litigation"), ECF No. 1, at
27  ¶ 14 ("The **parties** in the *Doe* lawsuits and **their counsel agreed** to use KCC as the
28  settlement administrator.") (emphasis added).

contract actually existed." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (6th Dist. 2006); *see also United States ex rel. N. Coast Iron Corp. v. Global Metals Corp.*, 2015 WL 12661913, *6 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment and relying on *Bustamante* to send issue of contract formation to jury). For example, Aetna speculates (with no support whatsoever) that Aetna and Gibson were intentionally omitted from the contract (which is false). (Motion, p. 2). But because this is inconsistent with the allegations in the FAC, this theory raises a factual issue that cannot be addressed at this stage. Accordingly, the Court should deny Aetna's Motion to the extent it argues that the FAC fails to plead the existence of a contract.

### 2.     The FAC pleads performance by KCC.

In the KCC Agreement, KCC's mailing duties were described as follows:

- Print and mail a 1-page Notice of Change in Business Practices to 20,000 class members;

- Print and mail a 1-page Notice and a 3-page Claim Form to the following:

     -48 class members that are in the Aetna insured group,

     -84 class members that are in the Coventry insured group of 2011-2015, and

     -1,700 class members that are in the Coventry insured specialty group.[6]

*See* ECF No. 25-1, p. 11. There is no question the FAC alleges that the mailing was completed. *See* FAC, ¶¶ 16, 76. Thus, Aetna argues that the contract required KCC to send the subject notices in envelopes without windows. (Motion, p. 14). But in the first two references, the KCC Agreement states only that KCC will "print

---

[6] To the extent KCC was required to engage in additional duties related to the settlement administration, KCC was not able to complete those duties because Aetna improperly terminated the KCC Agreement without cause.

and mail" the subject notices, with no reference to what sort of envelope will be used.  *See* ECF No. 25-1, pp. 11-12.  Then the KCC Agreement states that some notices will be sent using "#10 envelope," whereas other notices will be sent using "#10 window envelope."  *Id.*, p. 14.  But there is no principled reason to use a different type of envelope for the mailings — all mailings carried the same risk of revealing an individual's HIV status and there is no other distinguishing feature. Thus, Aetna's argument that the use (or non-use) of a windowed envelope is a "material term" is without merit.  In reality, many of the logistics related to the mailing evolved over time — for example, KCC did not end up sending the subject notices to 20,000 individuals — and Aetna, through its agent, Gibson, was actively involved in these decisions.  The FAC clearly alleges that Aetna, through Gibson, approved the final version of the mailing, with knowledge that a windowed envelope would be used.  (FAC, ¶ 16, 18, 60-61, 104, 129, 160).  Thus, even if the KCC Agreement could be read as requiring the use of non-windowed envelopes (which it didn't), the FAC has more than adequately alleged that this term, if it ever existed, was modified by agreement of the parties.  Accordingly, KCC has adequately pled its own performance.

Aetna does not dispute that KCC has adequately alleged a breach of the KCC Agreement by Aetna, and harm to KCC.  Because KCC has adequately alleged the existence of the contract and KCC's performance, the Court should deny Aetna's Motion with respect to Count I.  Additionally, because Aetna also seeks dismissal of the declaratory judgment claims in Counts IV and V based on Aetna's attack on Count I, Aetna's Motion should be denied with respect to those claims as well.

### B.     Count II adequately states a claim for negligence/failure to warn.

While Aetna is correct that, under California law, there is no general requirement to control the conduct of another or warn those endangered by such conduct, Aetna fails to recognize KCC has pled a duty to warn arising out of Aetna's misfeasance.  Moreover, even if Aetna's conduct could be construed as

1    mere nonfeasance, KCC still has pled a special relationship that supports failure to

2    warn.    And KCC has plausibly alleged a foreseeable, proximate harm.

3    Accordingly, KCC has adequately pled a claim for negligence/failure to warn, and

4    Aetna's Motion should be denied with respect to Count II.

5              **1.      KCC does not need to allege a special relationship**.

6              A failure to warn claim is a negligence claim in which the "duty" element of

7    negligence is a duty to warn, and the breach of that duty is the failure to warn.  *See*

8    *Doe No. 14 v. Internet Brands, Inc.*, 2016 U.S. Dist. LEXIS 192144, *7 (C.D. Cal.

9    Nov. 14, 2016)*.   Typically that duty to warn arises from a "special relationship,"

10   but in instances of "misfeasance," "the question of duty is governed by the

11   standards of ordinary care, i.e. 'a person ordinarily is obligated to exercise due care

12   in his or her own actions so as not to create an unreasonable risk of injury to others,

13   and this legal duty generally is owed to the class of persons who it is reasonably

14   foreseeable may be injured as the result of the actor's conduct.'"    *Id.* at *8.

15   "Misfeasance exists when the defendant is responsible for making the plaintiff's

16   position worse, i.e., ***defendant has created a risk***.   Conversely, nonfeasance is

17   found when the defendant has failed to aid plaintiff through beneficial

18   intervention."  *Id.* (emphasis added).

19             Here, KCC has clearly pled misfeasance by alleging that Aetna, through

20   Gibson, created the risk of disclosure by giving KCC unprotected PHI and failing to

21   implement proper safeguards.   *See*, *e.g.*, FAC, ¶ 133 ("Aetna created the risk by,

22   *inter alia*, allowing the Qualified Protective Orders in the Doe Litigation and

23   Coventry Litigation to expire, failing to enact appropriate protective measures in

24   place of the Qualified Protective Orders, and failing to warn KCC that appropriate

25   protective measures were not in place.").   Thus, there is no need for KCC to plead a

26   special relationship — the question of duty is determined under the "ordinary care"

27   standard.   Because KCC has alleged that Aetna unreasonably created a risk of

28

injury to KCC, and Aetna should have been able to foresee that risk, *see id.*, ¶¶ 127-135, the FAC adequately states a failure to warn claim based on misfeasance.

### 2.    Even if KCC needed to plead a special relationship, it has done so.

Even if KCC were required to plead a "special relationship" to state a failure to warn claim, KCC has done so.  "[A] duty of care may arise from either (a) a special relation between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation between the actor and the other which gives to the other a right of protection." *Internet Brands,* 2016 U.S. Dist. LEXIS 192144 at *9.  "[T]o say that a 'special relationship' exists is to say nothing other than the factors favoring imposition of a duty of care in particular circumstances outweigh the countervailing factors (one of which is that the harm was caused by a third person)." *Id.* at *10.  The factors considered to determine whether a duty exists include (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved." *Id.* at *7-*8.  Moreover, relationships are generally considered to be "special" when the relationships involve "dependency" and "control." *Regents of University of California v. Superior Court,* 2018 WL 1415703, *6 (Cal. March 22, 2018).*  "The existence of [d]uty is not an immutable fact of nature but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Id.* at *10 (internal citations omitted).

KCC's allegations, which must be taken as true for purposes of Aetna's Motion, demonstrate that each of these factors was present here. As an overarching matter, there is no doubt that the relationship between Aetna and KCC involved dependency and control — KCC was completely reliant on Aetna to ensure the confidentiality of the PHI.  Each of the other factors weighs in favor of finding a special relationship as well.  First, Aetna should have foreseen that KCC would be harmed by Aetna's and Gibson's mishandling of the PHI and failure to properly monitor the mailing.  (FAC, ¶ 120).  Second, it was certain that KCC likely would (and in fact, did) suffer injuries as a result of Aetna's and Gibson's misconduct.  *Id.*, ¶ 121.  Third, there was a close connection between Aetna's conduct and the injury suffered because if Aetna had engaged in proper oversight as required by HIPAA, the HIV status of its insureds would not have been disclosed and neither the insureds nor KCC would have been harmed.  *Id.*, ¶ 122.  Fourth, there is a significant amount of moral blame attributable to Aetna's conduct, given that Aetna was careless and reckless in how it treated the insureds' data, despite Aetna's HIPAA obligations.  *Id.*, ¶ 123.  Fifth, there is a strong public policy in preventing Aetna from behaving in such a reckless, careless and negligent fashion in the future and shifting the blame to others for its losses (including penalties paid).  *Id.*, ¶ 124. Sixth, imposing a duty to warn in this context would create no significant burden on Aetna beyond what is already required by HIPAA, and the consequences in the community would be positive.  *Id.*, ¶ 125.  Finally, there is a significant market for insurance that would cover this sort of risk.  *Id.*, ¶ 126.  Accordingly, KCC has pled a special relationship here.

### 3. The injuries incurred by KCC were reasonably foreseeable.

Aetna is one of the country's largest and oldest health insurers, with a stated mission to "build a healthier world — one person, one community at a time."  *Id.*, ¶ 3.  Aetna's agent in this matter, Gibson, has been lauded by legal journal *Law360* as a "Privacy Practice Group of the Year," *id.*, ¶ 73, and the particular lawyer from

Gibson that handled this matter specializes in health care, insurance, and class action matters and has a Masters of Public Health with a specialization in health services. *Id.*, ¶ 45. Thus, as clearly alleged in the FAC, Aetna and Gibson should have known that they should not have shared the PHI with KCC without a Qualified Protective Order or BAA[7] in place. *Id.*, ¶ 73. For companies and individuals with the collective experience of Aetna and Gibson, it is certainly foreseeable that some sort of inadvertent disclosure could occur — and KCC could be injured — if Aetna and Gibson failed to warn KCC about Aetna's failure to implement proper safeguards to protect PHI. Aetna could have accomplished this in any number of ways, including by having KCC sign a valid qualified protective order, notifying KCC that the qualified protective orders in the underlying litigation had expired, enacting appropriate protective measures of their own, asking KCC to sign a BAA, letting KCC know that it should independently take protective measures to ensure the safety and security of the PHI, or adequately supervising the mailing to ensure that PHI was not disclosed. But by failing to do *any* of those things, Aetna (and its agent, Gibson) — who have far greater knowledge of matters related to PHI than KCC does and have the duties under HIPAA — exposed KCC to injuries that would be reasonably foreseeable to any entity with Aetna's experience and expertise.

### 4.    KCC has adequately alleged proximate cause.

To demonstrate proximate cause, plaintiff must allege both that the defendant's action was the "cause in fact" and that holding the defendant liable is consistent with public policy. *PPG Industries, Inc. v. Transamerica Ins. Co.*, 975 P.2d 652, 655-656 (Cal. 1999). "An act is a cause in fact if it is a necessary antecedent of an event." *Id.* at 655. But proximate cause is also concerned "with

---

[7] By referring to a BAA, KCC does not concede that it was operating as a Business Associate and in fact, KCC was not operating as a Business Associate.

the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." *Id.* at 656; *see also Hernandez ex rel. Telles-Hernandez v. U.S.*, 665 F. Supp. 2d 1064, 1079 (N.D. Cal. 2009) (same).

Aetna argues that KCC's "sole allegation" of proximate cause is the "conclusory statement" in Paragraph 129 of the FAC. (Motion, p. 19). But that argument requires reading that sentence in isolation. The FAC repeatedly establishes that Aetna's conduct was the "cause in fact" for the injuries to KCC — if Aetna, through its agent Gibson, had adequately protected the PHI and supervised the mailing, the damages would not have occurred. *See* FAC, ¶¶ 15-16, 77-79, 88, 104. Moreover, the FAC establishes that the policy considerations in this case weigh in favor of imposing liability on Aetna. Holding Aetna responsible for its failures in this case is consistent with HIPAA and would increase the likelihood of future compliance. *Id.*, ¶¶ 86, 89-90, 124-25. Additionally, Aetna's past track record of disregarding the privacy rights of its insureds weighs in favor of finding proximate causation here. *Id.*, ¶¶ 91-100. Accordingly, the Court should find that KCC has pled proximate cause.

For the foregoing reasons, the Court should find that KCC has adequately pled a failure to warn claim in Count II and should deny the Motion.

### C.   Count III adequately states a claim for *quantum meruit*.

Aetna correctly states the elements of a claim for *quantum meruit*, but fails to properly apply those elements to the allegations in the FAC. (Motion, p. 19). Under California law, elements that must be alleged to state a claim for *quantum meruit* are (1) that plaintiff performed certain services for defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid. *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002 (C.D. Cal. 2000). Because the FAC alleges facts sufficient to plausibly support each of those elements, Count III should survive Aetna's Motion.

First, as set forth at length in Section III.A.1, *supra*, the FAC clearly alleges that KCC performed the mailing services for Aetna, at Aetna's request. The settlement agreement in the underlying lawsuits indicated that Aetna was solely responsible for the notice and it was Aetna (through Gibson) that initially approached KCC in February 2017 to request a proposal for mailing and settlement administration services. Moreover, it would have been impossible for KCC to perform the mailing at all if it had not been working at Aetna's and Gibson's direction because Aetna was the only party in possession of the necessary data related to the insureds. Aetna (through Gibson) guided the entire process of preparing the draft notices and gave express approval of the final notices before they were sent. There can be no question, then, that Aetna requested these services and that they were performed for Aetna.

Aetna argues that the services provided are not what it requested because the mailings were sent in windowed envelopes. But the allegations in the FAC (which must be taken as true for the purposes of this Motion) establish that Aetna, through Gibson, approved the final version of the mailing, with knowledge that a windowed envelope would be used. (FAC, ¶¶ 16, 18, 60-61, 104, 129, 160). Thus, Aetna's claim that the mailings should have been sent in non-windowed envelopes (which ironically relies on the KCC Agreement that Aetna claims does not apply (Motion, p. 20) is without merit.

Finally, Aetna does not dispute that KCC has not been compensated for the fair value of its work. Accordingly, all four elements have been satisfied and Count III should survive.

### D. The declaratory judgment claims in Counts IV-VI are adequately pled.

As an initial matter, even if Court determines that one or more of the declaratory judgment counts is duplicative of the other claims in the FAC, the duplicative declaratory judgment claim would be a remedy that "rises and falls with

[the] other claims."  (Motion, p. 21) (citing *Ballard v. Chase Bank USA, NA*, 2010 WL 5114952, *8 (S.D. Cal. Dec. 9, 2010)).[8]  Because, as set forth above, Counts I-III of the FAC should survive dismissal, any duplicative declaratory judgment counts should survive as well.

Moreover, while Count IV can reasonably be construed as a mirror image of the breach of contract claim, Counts V and VI are not redundant of other claims. *See Sierra View Local Health Care Dist. v. Influence Health, Inc.*, 2016 WL 2346799, *7-*8 (E.D. Cal. May 3, 2016) (denying motion to dismiss declaratory judgment counts where claims were not redundant).  Both counts request a finding that KCC does not owe a duty of indemnity, contribution and/or reimbursement to Aetna — Count V based on the contractual language of the KCC Agreement and Count VI based on common law theories of indemnity.  With respect to Count V, KCC seeks a declaration that, under the KCC Agreement, it is not required to indemnify Aetna.  Unlike Counts I and IV, which use the KCC Agreement as a sword to argue that KCC is entitled to damages and indemnity from Aetna, Count V uses the KCC Agreement as a shield.  Thus, even if the Court were to find that although the KCC Agreement is a valid, enforceable agreement, KCC is entitled to no damages or KCC is not entitled to indemnity, the Court could still find that the KCC Agreement protects KCC from Aetna's claims for indemnity, contribution and/or reimbursement.  Accordingly, the claim is not redundant and should survive.

Count VI, on the other hand, is completely untethered to the KCC Agreement.  Even if the Court were to find that the KCC Agreement is completely unenforceable, that finding would not preclude KCC from obtaining a declaration that it does not owe a duty of indemnity, contribution and/or reimbursement to

---

[8] Notably, however, this issue was ***not*** raised by Aetna in the parties' Local Rule 7-3 Conference on March 6, 2018, as reflected in the parties' Joint Statement.  *See* ECF No. 28.

Aetna.  In its Motion, Aetna argues that Count VI is simply a mirror image of its complaint in the E.D. Pa. Litigation, which it incorrectly describes as the "first-filed" case.  According to Aetna, Count VI is an "improper 'reactive declaratory action.'"  (Motion, p. 22).  But as described at length in KCC's Response in Opposition to Aetna's Motion to Dismiss, Transfer, or Stay, filed contemporaneously with this Response, Aetna is wrong about which case was "first-filed."  In reality, the E.D. Pa. Litigation is the "reactive" filing — not this case.  Moreover, it is notable that the case relied on by Aetna is not analogous to this case, but rather addresses the fact that, in general, district courts are encouraged to abstain from hearing cases where a parallel state court proceeding has already been filed.  *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (not making a determination and instead sending the matter back to the district court for review).

Notably, as a matter of law, Aetna is not entitled to indemnity, contribution, or reimbursement because the funds that it allegedly paid (or will pay) in class actions and regulatory actions were the result of voluntary settlements.  Aetna has not admitted liability or been found liable in those matters, but has chosen to voluntarily agree to payment terms.  "Equitable indemnity, like subrogation, is not available to a volunteer."  *Union Pac. Corp. v. Wengert*, 79 Cal. App. 4th 1444, 1447-48 (2000); *see also Peter Culley & Associates v. Superior Court*, 10 Cal. App. 4th 1484, 1493 (1992) ("As a general rule, an indemnity contract does not cover losses for which the indemnitee is not liable to a third person."); *Cossu v. Jefferson Pilot Sec. Corp.*, 410 F.3d 591, 595 (9th Cir. 2005) ("As the party seeking indemnity, without a judgment ordering it to pay, Jefferson Pilot had the burden of demonstrating that it was actually or at least potentially liable on the underlying claim and that the settlement amount was reasonable.").  Moreover, to the extent Aetna has been (or may be) found liable for violating HIPAA or any other federal statute, Aetna is not entitled to recover from KCC.  *See Mortgs., Inc. v. United*

*States Dist. Court*, 934 F.2d 209, 212 (9th Cir. 1991) ("A defendant held liable under a federal statute has a right to contribution or indemnification from another who has also violated the statute only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) via the power of the courts to formulate federal common law.").

Accordingly, all three of the declaratory judgment counts should survive Aetna's Motion.

## IV.    Conclusion

For the foregoing reasons, the Court should deny Aetna's Motion and allow KCC to proceed with all six of its claims.

Dated:  March 26, 2018                  KCC CLASS ACTION SERVICES, LLC


                                        By: /s/ *Blaine C. Kimrey*
                                             Blaine C. Kimrey

                                        **VEDDER PRICE (CA), LLP**
                                        CHRISTOPHER R. RAMOS (SB# 301556)
                                        cramos@vedderprice.com
                                        1925 Century Park East, Suite 1900
                                        Los Angeles, California 90067
                                        T:  +1 424-204-7700
                                        F:  +1 424 204-7702

                                        **VEDDER PRICE P.C.**
                                        BLAINE C. KIMREY (admitted *pro hac vice*)
                                        bkimrey@vedderprice.com
                                        JEANAH PARK (admitted *pro hac vice*)
                                        jpark@vedderprice.com
                                        222 N. LaSalle Street
                                        Chicago, Illinois  60601
                                        T: +1 312-609-7500
                                        F: +1 312-609-5005

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2018, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system and that all counsel of record will be served via the Notice of Electronic Filing generated by CM/ECF.

/s/ *Blaine C. Kimrey*
Blaine C. Kimrey